# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ABORNES INTERNATIONAL, INC.,

    Plaintiff

v.

ALL AMERICAS INTERNATIONAL, INC.,

    Defendant

Case No.: 3:24-cv-00100-ART-CSD

**Order**

Re: ECF Nos. 67, 70, 81

Plaintiff Abornes International, Inc., filed a motion to conduct the depositions of Dinara Usmanova[1], Ingrid Sucre, and Abornes' 30(b)(6) witness by remote means. (ECF Nos. 67, 67-1.)

Several days later, Abornes filed an emergency motion for a protective order regarding Defendant All Americas International's (AAI) noticed depositions for these witnesses. (ECF Nos. 70, 70-1.) The request in the emergency motion at ECF No. 70 is for the court to preclude the depositions from taking place in November, as noticed by AAI, until the court has an opportunity to rule on the motion to take the depositions by remote means. The emergency motion (ECF No. 70) is denied as moot because the court entered an order staying these depositions pending resolution of the motions (ECF No. 71), and the depositions did not take place in November, as noticed.

AAI filed a response to the motions. (ECF Nos. 73, 73-1 to 73-9.) Abornes filed a reply. (ECF No. 74.)

---

[1] The witness is referred to both as Ms. Usmanova and Ms. Usmanov in the briefing. The court will refer to her as Ms. Usmanova in this Order as that is the name used by Abornes in its briefing.

The court held a hearing on November 19, 2025. (ECF No. 76.) This was followed by a written order confirming that Abornes was required to provide AAI's counsel with declarations from Ms. Sucre and Ms. Usmanova to support Abornes' claim that requiring them to appear in the United States for their depositions is unduly burdensome. The court gave Abornes leave to file a supplemental brief in support of its position that the depositions be taken by remote means by December 5, 2025, and allowed AAI to file a supplemental responsive brief on or before December 12, 2025. (ECF No. 77.)

Abornes filed its supplemental briefing. (ECF Nos. 78, 78-1 to 78-14, 79-1 to 79-6.) AAI filed its supplemental responsive brief. (ECF Nos. 80, 80-1 to 80-2.)

The court has reviewed the briefing and now issues this Order granting Abornes' motion to have the depositions of Ms. Sucre, Ms. Usmanova and Abornes' 30(b)(6) witness taken by remote means.[2] Abornes did not present a specific argument as to any other witness, and therefore, the motion is granted only with respect to Ms. Sucre, Ms. Usmanova, and Abornes' 30(b)(6) witness.

Abornes has also filed a motion to extend the remaining deadlines (ECF No. 81), which AAI does not oppose (ECF No. 82). The court grants that motion, as provided *infra*.

## I. BACKGROUND

Abornes is a Marshall Islands company suing AAI, a Nevada corporation. Abornes alleges that in 2012 or 2013, AAI entered into two promissory notes with third party Motril Investments, S.A., in the amount of $5.5 million, plus interest. AAI made payments to Motril, reducing the balance to roughly $3.7 million. Then, in December 2018, Abornes alleges that Motril assigned the promissory notes to Abornes in an agreement to which AAI was a signatory

---

[2] It appears from the briefing that Ms. Sucre will also serve as Abornes' 30(b)(6) witness.

party. The assignment agreement is governed by the laws of Nevada. Abornes claims that AAI has not made any payments and is entitled to a balance of over $4 million. Abornes sues AAI for breach of contract, breach of the implied covenant of good faith and fair dealing, and alternatively, for unjust enrichment, as well as declaratory relief. (Compl., ECF No. 1.) AAI's defenses include their claims that the notes are either unenforceable or have been forgiven.

The initial scheduling order set the close of discovery in this action for September 30, 2024. (ECF No. 14.) Since that time, the discovery cutoff has been extended at least seven times, most recently to December 1, 2025. (*See* ECF Nos. 18, 19, 27, 33, 35, 51, 59, 64, 66.)

On April 18, 2025, AAI initially noticed the deposition of Abornes' 30(b)(6) witness for May 8, 2025. (ECF No. 73-2.)

Due to Abornes' unavailability, AAI re-noticed the deposition of Ms. Sucre, in her individual capacity for June 27, 2025, and Abornes' 30(b)(6) witness for June 30, 2025. (ECF No. 73-3.) AAI also noticed the deposition of Abornes' majority shareholder, Ms. Usmanova, for July 2, 2025. (ECF No. 73-4.)

In a July 7, 2025, stipulation to extend discovery, the parties raised the issue of scheduling these depositions, noting that the parties were meeting and conferring to resolve the scheduling issues. (ECF No. 59 at 2.)

Abornes' counsel advised of his unavailability and AAI re-noticed the depositions for mid-August. (ECF No. 73-5.) At that time, Abornes represented that Ms. Sucre was a foreign national and required a visa to travel to the United States. AAI then re-noticed the depositions for the end of September. (Tennert Decl., ECF No. 73-1 ¶¶ 6-8; ECF No. 73-5.)

As of August 14, 2025, the parties noted they were working to schedule the depositions. (ECF No. 64 at 2-3.)

3

On September 19, 2025, Abornes' counsel forwarded Ms. Sucre's visa appointment confirmation, showing an appointment set for November 25, 2025. (ECF No. 73-6.) Abornes' counsel represents that it notified AAI that Ms. Usmanova who is a resident of the United Arab Emirates (UAE), had a visa appointment scheduled for November 21, 2025. (Power Decl., ECF No. 67-1 ¶ 4.)

On September 25, 2025, the parties represented that they needed until November to complete these depositions. (ECF No. 66 at 2-3.)

On October 1, 2025, AAI re-noticed the depositions for the first week of November 2025. (ECF No. 73-8.) This occurred, even though AAI admits it knew Ms. Sucre did not have a visa appointment until the end of November. Abornes objected to the deposition notices on October 20, 2025. (Tennert Decl., ECF No. 73-1 ¶ 13.)

On October 27, 2025, Abornes filed this motion to take the remaining depositions by remote means. (ECF No. 67.)

As the hearing, it was represented that Ms. Usmanova would have to fly from Dubai to Uzbekistan for her visa appointment (because she is an Uzbekistan national living in the UAE). The court said it would not require her to do so at that juncture, and Ms. Usmanova cancelled her travel plans to Uzbekistan. Following the hearing, at the court's direction, Abornes provided declarations from Ms. Sucre and Ms. Usmanova.

Ms. Sucre is a citizen and resident of Panama. She is the nominee director of Abornes. Her testimony will be limited to the information in Abornes' records that were transferred to her after her appointment as director in July 2021. She engaged the services of a company to apply for a visa to the United States on her behalf, and she obtained an appointment at the U.S. Consulate for November 24, 2025, in Panama City, Panama. She went to that appointment, and

her visa was approved. She states that in order to travel to Nevada, she would have to take a five-hour flight to Houston, and following a layover, an additional four-hour flight to Reno, at a cost of several thousand dollars. She would have to secure transportation and hotel accommodations, and complete this process in reverse back to Panama after the deposition. Ms. Sucre lives with her elderly father, who requires around the clock care, and she works from home three days a week to provide that care. To travel to the United States, she would have to find a nurse or equivalent caregiver for her father. (ECF No. 78-2.)

Ms. Usmanova, the majority shareholder of Abornes, is a citizen of Uzbekistan and resident of Dubai in the UAE. (ECF No. 78-9.) She applied for a visa with the U.S. Embassy in Uzbekistan, which had a shorter wait than in the UAE. She obtained an appointment with the U.S. Embassy in Uzbekistan on November 21, 2025, but she cancelled her flight there was she was informed that the court would not require her to travel for the appointment at this time. If she obtained a visa to travel to the United States, she would have to take a 16-hour flight to Dallas or similar airport, followed by a layover and an additional flight to Reno. Like Ms. Sucre, she would have to arrange for accommodations and transportations in the United States, and repeat that process in reverse to go back to the UAE. She estimates the cost for her travel to be $8,000, plus at least an additional $2,000 for hotels and food. This would require her to be away from home for a minimum of two weeks, and she would have to make arrangements for childcare in her absence. (ECF No. 78-9.)

Both Ms. Sucre and Ms. Usmanova state that they can make arrangements for a conference room for the deposition at a suitable location, such as a local law firm, to ease concerns about connectivity, coaching, and legitimacy. They also both agree to take an oath issued by a court reporter so the deposition can be utilized in the District of Nevada.

Abornes requests that the depositions be conducted remotely because it is a Marshall Islands entity with no business in the United States except for this lawsuit, which was initiated in the District of Nevada because it is where AAI resides. In addition, Ms. Sucre and Ms. Usmanova are foreign nationals who require visas for travel to the United States, and their travel to Reno, Nevada would require significant time and expense. Abornes argues that AAI will not suffer any specific prejudice as a result of the remote depositions.

AAI, on the other hand, argues that it agreed to reschedule the depositions based on representations that Ms. Sucre was diligently pursuing a visa to travel to Nevada to be deposed in person. It contends that because Abornes chose to bring this action in Nevada, it cannot seek to shield its key witnesses from appearing in Nevada to be deposed. AAI expresses concerns regarding whether Ms. Sucre is a real person, is a resident of Panama, and is even Abornes' director, a point which was reiterated by counsel at the hearing on this motion. AAI asserts that in person depositions are the most effective means of obtaining testimony. It maintains Abornes has not demonstrated legitimate reasons for conducting the depositions remotely and remote depositions would significantly prejudice AAI because the credibility of Abornes' representatives is central to this litigation and remote depositions are an insufficient means of testing their credibility. AAI further contends that remote depositions pose a risk of witness coaching and manipulation. Finally, AAI asserts that Abornes has not shown compliance with Federal Rule of Civil Procedure 28 for international depositions.

## II. DISCUSSION

A party from whom discovery is sought may move for a protective order to prevent annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The party seeking issuance of a protective order bears the burden of persuasion. *U.S. E.E.O.C. v.*

*Caesar's Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (citation omitted). The burden is met by demonstrating a particular need for protection supported by specific facts. *Id*. "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation and quotation marks omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

While in person depositions were the norm for many years, taking depositions by remote means has become common in the post Covid-19 pandemic era. *See F.T.C. v. Int'l Markets Live, Inc.,* Case No. 2:25-cv-00760-CDS-NJK, 2025 WL 2644178, at *1, n. 3 (D. Nev. Sept. 15, 2025). Moreover, the rules specifically provide that the parties may stipulate, or the court may order on motion, that a deposition be taken by remote means. Fed. R. Civ. P. 30(b)(4).

"Generally, leave to take depositions by remote means should be granted liberally." *Swenson v. Geico Cas. Co.*, 336 F.R.D. 206, 209 (D. Nev. Aug. 19, 2020) (citations omitted); *see also F.T.C.,* 2025 WL 2644178, at *1 (citations omitted). Rule 30(b)(4) does not provide a particular standard for allowing, or disallowing, a deposition by remote means, but the parties agree that courts generally utilize a two-part framework for analyzing such requests. First, the moving party must demonstrate a legitimate reason for taking a deposition by remote means. If that showing is made, then second, the burden shifts to the opposing party to make a "particularized showing" that conducting a deposition remotely would be prejudicial. *F.T.C.,* 2025 WL 2644178, at *1 (citations omitted).

First, the court finds Abornes has advanced legitimate reasons for taking these depositions remotely. AAI argues that the inconvenience and cost of travel are not legitimate reasons to conduct a deposition remotely. However, many courts have concluded that extensive travel and associated costs is a legitimate reason to conduct a deposition remotely. *F.T.C.*, 2025

WL 2644178 at *3 (citing cases). Here, the deponents would be traveling from Panama and the UAE, both with a significant duration and substantial expense. Moreover, Ms. Sucre has provided a declaration concerning her need to secure a caregiver for her elderly father while she is away. Ms. Usmanova's travel from the UAE is even more significant, and she would have to secure childcare in her absence.

AAI further argues this logic should not apply to a plaintiff who has voluntarily sought to bring suit in this District. AAI relies primarily on a case from the District of South Dakota, *Buergofol GMBH v. Omega Liner Co., Inc.*, 4:22-cv-04112-KES, 2025 WL 2004308 (D.S.D. July 17, 2025). The court has reviewed this authority, but the court is not in any way bound by a decision of another district court. *Buergofol* specifically recognized that courts have broad discretion concerning the location and manner in which a deposition is taken. One of the considerations in the court denying a remote deposition *Buergofol* was that the plaintiff had voluntarily initiated in the action in that district, but there was no discussion of the fact that, as is the case here, the plaintiff really had no choice but to bring the action in this district. The court in *Buergofol* also had little confidence that a remote deposition would proceed "harmoniously" because the case had been fraught with discovery disputes. In this case, counsel have been professional and able to work together, and even though there have been a few disputes along the way, the court does not foresee a remote deposition being unsuccessful because of a history of discovery problems.

Second, the court finds that AAI would not be unduly prejudiced by taking these depositions remotely.

/ / /

/ / /

8

Insofar as AAI voices concern over whether Ms. Sucre, and to a lesser extent Ms. Usmanova, are in fact real people, the court believes that speculation has been thoroughly debunked by the declarations submitted by the witnesses.

Next, the court will address AAI's argument that AAI will not be able to effectively assess credibility as well as concerns over potential manipulation and witness coaching.

Preliminarily, as Magistrate Judge Koppe recently recognized, a mere preference to take a deposition "the old-fashioned way" is insufficient. If a preference to sit across from a witness and hand them documents and question the witness about the documents in person was enough to defeat a request to conduct a deposition remotely, then "Rule 30(b)(4) would be rendered meaningless." *F.T.C.*, 2025 WL 2644178, at *3.

Current videoconferencing technology allows attorneys to view a witness' demeanor in general and in response to specific questions, and permits the attorney to show a witness a document without concerns of manipulation. Ms. Sucre and Ms. Usmanova have both offered to be deposed in a location such as a law office with an appropriate neutral party present to alleviate concerns regarding coaching and manipulation. Insofar as counsel argued at the hearing that there are overarching issues concerning manipulation through artificial intelligence (AI), that may be a remote possibility, but AAI has not advanced specific concerns that counsel or these witnesses may engage in such behavior. If it came to light that this was occurring, the court might reconsider the need for in person depositions.

AAI relies on cases where credibility was a key issue in an action to argue that the inability to question a witness in person justifies denial of a motion to conduct the depositions remotely. AAI characterized this case as a "simple" breach of promissory note case at the October 28, 2024, hearing, and made a similar characterization in its briefing on this motion.

9

(ECF No. 73 at 3:14-15.) While there may be a dispute between the parties about whether the promissory notes actually exist, AAI has not presented the court with anything other than generic speculation that *these witnesses* may not be credible concerning any testimony about the instruments. There is no suggestion they have made any prior misrepresentations, with respect to this case or otherwise, or that they would do anything but testify truthfully under oath. Insofar as AAI disputes the duration of Ms. Sucre's status as a director of Abornes, it may question her about these facts in her deposition, with reference to any relevant documents.

AAI further argues that cases have also considered whether the witness is a key or critical witness. Ms. Sucre's declaration states that her knowledge is limited to Abornes' corporate records since her 2021 appointment as interim director, which post-dates the assignment agreement. AAI has not provided any specific information regarding how Ms. Usmanova will serve as a key, or critical, witness.

In sum, the court finds that these two factors along with Federal Rule of Civil Procedure 1's direction that the Rules be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding," justify these depositions being taken remotely.

The court will now address the impact of Rule 28.

For purposes of Rule 28(a), the deposition takes place where the deponent answers the questions. Fed. R. Civ. P. 30(b)(4). Rule 28 provides four methods for taking a deposition in a foreign country for use in this District: (1) an applicable treaty or convention; (2) a letter of request, such as a "letter rogatory;" (3) on notice "before a person authorized to administer oaths either by federal law or by the law in the place of examination;" or (4) "before a person commissioned by the court to administer any necessary oath and take testimony." Fed. R. Civ. P. 24(b)(A)-(D).

Abornes has not cited an applicable treaty or convention, indicated they have made a letter of request such as a letter rogatory or sought a commission. Therefore, option three may be the only viable way to proceed at this juncture.

It does not appear sufficient *under Rule 28* if a court reporter present in the United States administers the oath by remote means to the deponents in Panama and the UAE. *See Azizpur v. AAA Life Ins. Co.*, CV-23-09297-MWF (AGRx), 2025 WL 819700, at *1 (C.D. Cal. Feb. 27, 2025) (citing cases that deponent and person who administers the oath must be in the same place). Abornes has not specifically addressed how they will satisfy this requirement, but it is possible that Abornes could contact the U.S. Embassy or Consulate in the UAE and in Panama regarding administering the oath for, assuming the law of the host country does not preclude the taking of the deposition.

Alternatively, the parties may stipulate concerning the manner in which the deposition is taken in the foreign country under Federal Rule of Civil Procedure 29, such as by appearing before a lawyer or court reporter in Panama and the UAE, or other means.

The latter appears to be the more prudent course of action, and Ms. Sucre and Ms. Usmanova state in their declarations they agree to take the oath administered by a court reporter (who is presumably present in the United States) and for use of the deposition in this action in this District. The court will leave it to the parties to address these details and assure compliance with either Rule 28 or a stipulation pursuant to Rule 29, reminding them again of Rule 1's directive that the rules be employed by the parties to ensure "the just, speedy, and inexpensive determination" of this action.

In conclusion, the court will grant the motion take these three depositions remotely, and will also grant the unopposed motion to extend the deadlines. The parties have 60 days from the

date of this order to complete discovery, including the three depositions that are the subject of this order. The dispositive motion and joint pretrial order deadlines will be extended correspondingly.

### III. CONCLUSION

Abornes' emergency motion (ECF No. 70) is **DENIED AS MOOT**.

Abornes' motion to have the depositions of Ms. Sucre, Ms. Usmanova, and Abornes' 30(b)(6) witness taken remotely (ECF No. 67) is **GRANTED**.

The remaining deadlines are extended as follows:

| | |
|---|---|
| Discovery cutoff | **March 27, 2026** |
| Dispositive motions | **April 27, 2026** |
| Joint Pretrial order | **May 27, 2026** (or 30 days after an order on any dispositive motion) |

**IT IS SO ORDERED**.

Dated: January 26, 2026

_____
Craig S. Denney
United States Magistrate Judge

12